**PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 15-3839
_____

FREDRICK CAPPS,
                                        Appellant

v.

MONDELEZ GLOBAL, LLC

_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(E.D. Pa. No. 2-14-cv-04331)
District Judge:  Honorable Gerald J. Pappert

_____

Argued July 12, 2016

Before:  FUENTES[*], SHWARTZ and RESTREPO,
*Circuit Judges*

(Filed: January 30, 2017)

Christine E. Burke    [ARGUED]
Ari R. Karpf
Karpf Karpf & Cerutti
3331 Street Road, Suite 128
Two Greenwood Square
Bensalem, PA 19020
                *Counsel for Appellant*

_____

[*] Honorable Julio M. Fuentes assumed senior status on July 18, 2016.

Leslie M. Greenspan    [ARGUED]
Joe H. Tucker, Jr.
Tucker Law Group
1617 John F. Kennedy Boulevard, Suite 1700
Philadelphia, PA 19103
                    *Counsel for Appellee*


Jeremy D. Horowitz    [ARGUED]
Equal Employment Opportunity Commission
131 M Street, N.E., 5th Floor
Washington, D.C. 20507
                    *Counsel for Amicus Curiae*

---

OPINION

---

RESTREPO, *Circuit Judge*.

Frederick Capps challenges the District Court's Order granting summary judgment in favor of Capps' former employer, Mondelez Global, LLC ("Mondelez"), one of the largest manufacturers of snack food and beverage productions in the United States. Specifically, Capps argues that the District Court erred in granting Mondelez's summary judgment motion on Capps' claims that Mondelez: (1) interfered with his rights under the Family and Medical Leave Act ("FMLA"), 29 U.S.C. § 2601 *et seq.*; (2) acted in retaliation to Capps' proper use of FMLA leave; and (3) violated the Americans with Disabilities Act, as amended ("ADA"), 42 U.S.C. § 12101 *et seq.*

For the reasons that follow, we affirm the District Court's Order granting summary judgment in favor of Mondelez. In so doing, we hold that an employer's honest belief that its employee was misusing FMLA leave can defeat an FMLA retaliation claim. We also confirm that, under certain circumstances, a request for intermittent FMLA leave may also constitute a request for a reasonable accommodation under the ADA, but under the circumstances in this particular

2

case, even assuming, *arguendo*, such a request was made, there is a lack of evidence that Mondelez failed to provide any requested accommodation.

## I. BACKGROUND

Mondelez's predecessor, Nabisco, hired Capps in November 1989. At all relevant times to this action, Capps held the position of mixer, which required him to operate a mixing machine that makes dough.

Mondelez has maintained a policy that an employee is entitled to FMLA leave for a "serious health condition of the employee that makes the employee unable to perform one or more of the essential functions of his/her position." (JA 451.) An employee may use intermittent FMLA leave when it is a "medical necessity," and the employee must provide notice of the leave "as soon as practicable." (JA 451-52.)

Any employee who wishes to take FMLA leave due to his own serious health condition must provide the company with a certification from his health care provider. Company policy also provides: "As with all communications with the Company, the submission of false information to the Company regarding the need for FMLA leave, or the fraudulent use of FMLA leave, may result in discipline, up to and including termination." (JA 452.)

Mondelez also has a policy entitled "Dishonest Acts on the Part of Employees" ("Dishonest Acts Policy"), which is considered a "Major Rule." (JA 449, 457.) Violations of "Major Rules" are considered inexcusable offenses that "will result in immediate suspension pending investigation, which could lead to termination." (JA 449, 457.) Mondelez's Dishonest Acts Policy includes the warning that "**THE COMPANY WILL NOT TOLERATE DISHONESTY ON THE PART OF ITS EMPLOYEES, WHETHER IT BE COMMITTED AGAINST THE COMPANY, ANOTHER EMPLOYEE, ITS CUSTOMERS, OR OTHERS EITHER DURING OR AFTER WORKING HOURS**" and that "**ANY EMPLOYEE FOUND GUILTY OF A DISHONEST ACT WOULD BE SUBJECT TO DISMISSAL.**" (JA 449 (emphasis in original).)

3

Capps suffers with Avascular Necrosis ("AVN"), which was described by Aron Guttin, D.O., Capps' treating physician, as "a condition in which there is a loss of blood flow, severely limiting oxygen and nutrient delivery to the bone and tissues, essentially suffocating and causing death of those cells." (JA 312.) As a result of the AVN, Capps developed arthritis in both hips which necessitated bilateral hip replacement in or about 2003.

He has experienced severe pain at times in the pelvic region, thighs and hips, sometimes lasting for days or weeks at a time. Therefore, he requested intermittent time off from work when flare-ups occurred. Capps was certified for intermittent FMLA leave following his hip replacements, and thereafter throughout his tenure at Mondelez, he was continuously recertified approximately every six months for intermittent FMLA leave for his condition until his employment was terminated in 2014.

The certification supporting Capps' approved FMLA leave covering January 24, 2013 through July 23, 2013 was completed by Dr. Guttin who certified that Capps was unable to perform certain job functions as a result of his condition. Where the certification form required Dr. Guttin to "identify the job functions the employee is unable to perform," Dr. Guttin responded that Capps "requires full bedrest during exacerbations." (JA 334.)

Dr. Guttin further stated that "[t]his year [the episodes] have been more severe [and] more frequent than years prior" and that Capps "experiences temporary periods of inflammation that are debilitating and require anti-inflammatory medication and rest." (JA 334, 335.) Mondelez's third-party FMLA administrator, WorkCare, approved this request under the FMLA, and the approval noted that Capps "may need to be off work 1-2 times every month for a duration of up to 14 days per episode for incapacity and treatment appointments." (JA 342.)

On Monday, February 11 and Tuesday, February 12, 2013, Capps took FMLA leave due to leg pain, and he returned to work for a full shift on Wednesday, February 13,

4

2013. Capps was scheduled to work on Thursday, February 14, 2013, but he called Mondelez's phone system and the FMLA message line on February 14th stating he would be late to work because of leg pain. Later that day, he again called the FMLA message line and Mondelez's phone system stating that he would be taking a full day of FMLA leave since the pain had not subsided. Dr. Guttin also signed Capps' FMLA certification form dated February 14th.

Capps testified at his deposition that his wife was out of the country that week on a business trip and that because he didn't "know how to cook," he had to "call out or go out" for his meals. (JA 279.) Capps further testified that at approximately 6:30 p.m. on the 14th he drove to a local pub, which was not more than one and a half miles from his home, to "get something to eat" (JA 279). According to Capps, at the pub he also drank three beers and three shots of alcohol with his friends, and he spent approximately two and a half (2 ½) to three hours at the pub. Afterwards, despite feeling too intoxicated to drive, Capps attempted to drive home.

Capps testified that after leaving the pub, at or around 9:00 p.m. he was stopped by police. The Bensalem Township police drove Capps to the hospital for a blood test, which resulted in a reading of a blood alcohol concentration level of 0.339% - more than four times the legal limit in Pennsylvania. Capps testified that he was released from jail early the next morning on Friday, February 15, 2013. He further testified that he woke up on the 15th "probably about 10, 11 o'clock" and his "legs were bothering [him] again." (JA 46.) He stated that he "just hung around the house, just wasn't feeling good" and "took some Aleve again." (JA 46.)

Capps was scheduled to begin his shift that Friday afternoon at 1 p.m. on February 15th. However, on the 15th, he called Mondelez's phone system and the FMLA message line indicating that he would be using FMLA leave due to leg pain.

Capps returned to work on Monday, February 18, 2013. Upon returning to work, he performed the same work and received the same salary and benefits as before taking FMLA leave. He did not report his arrest to anyone at

5

Mondelez; nor was he required to under Mondelez's policies. Upon recertification, Capps was approved for FMLA leave from July 31, 2013 through January 30, 2014.

On August 7, 2013, Capps pled guilty to the charge of Driving Under the Influence of Alcohol ("DUI"), and he served 72 hours in jail immediately following the guilty plea hearing. His sentence also included probation, costs and fines, and suspension of his driver's license.

In early 2014, William Oxenford, a Human Resources ("HR") Manager at Mondelez, became aware of Capps' DUI conviction and sentence by finding in Oxenford's company mailbox a newspaper article reporting the same. Oxenford asked Barbara McAvoy, an employee in the HR department, and Nancy Pace, administrative assistant to the plant manager, to investigate Capps' attendance record to determine if Capps had any absences during the time frame of Capps' arrest and conviction.

Although neither Oxenford nor McAvoy were attorneys, and they did not understand the meaning of all the docket entries, upon reviewing the criminal court docket related to Capps' conviction, Oxenford and McAvoy noticed that Capps' arrest date and "court dates" appeared to coincide with days on which Capps had taken FMLA leave. For instance, Capps' arrest date, February 14, 2013, was a day on which Capps had called out on FMLA leave. He also called out on FMLA leave the next day. In addition, he called out of work using FMLA leave on other dates that appeared on the court docket: June 4, 2013 ("Appearance and Waiver of Arraignment") and October 15, 2013 ("ARD Court").

Oxenford and McAvoy confronted Capps and his union representative with this information at a meeting on February 26, 2014. In response, Capps promised to provide documentation to support his FMLA leave on the days in question, and Capps was suspended pending further investigation.

Upon being suspended, Capps submitted to Mondelez an undated letter from Dr. Guttin confirming the aforementioned dates Capps had taken FMLA leave during

the week of February 11, 2013 due to his "hip pathology" (JA 407). The undated letter further stated that Capps had taken FMLA leave on June 3 and 4, 2013 due to his hip pathology, and also that he had a court date on June 7, 2013 but "waived his right for that appearance." (JA 407.) Oxenford was suspicious of the undated letter which included legal information from Dr. Guttin regarding scheduled court dates and certain legal rights that Capps had waived. Mondelez subsequently received a nearly identical letter dated February 27, 2014 from Dr. Guttin.

Capps also submitted to Mondelez an unsigned first page only of a letter dated May 31, 2013 addressed to Capps from his attorney in the DUI matter confirming some of the dates related to his DUI action. On April 21, 2014, nearly two months after he was suspended and promised to provide documentation (and one month after receiving notice of his termination), Capps provided a complete copy of that 2-page letter. After Capps had been terminated, he presented a second letter from his DUI attorney dated March 26, 2014 confirming that Capps attended court proceedings on May 9, 2013 and August 7, 2013 and that Capps was incarcerated from August 7, 2013 to August 10, 2013.

Capps was notified of his termination of employment by letter dated March 21, 2014, effective February 26, 2014. That decision was made by Oxenford and the plant manager, Rusty Moore, in conjunction with Mondelez's legal department. The letter confirmed that Capps' termination was based on his violation of the Dishonest Acts Policy. The termination letter further stated: "You claimed to be out due to [ ] FMLA related issues on multiple dates. The documentation you produced does not support your claim of [ ] FMLA related absences." (JA 404.)

Following Capps' termination, Mondelez retained the services of an investigator. The investigator reported on April 25, 2014 that a detective from the police department indicated that Capps had been released from custody from his DUI arrest at 6:00 a.m. on the morning following the arrest.

Capps completed a Grievance Form on March 27, 2014 claiming he was "unlawfully terminated." (JA 405.)

7

Mondelez offered Capps reinstatement without back pay on April 28, 2014, and Capps rejected the offer of reinstatement on May 13, 2014.

Capps initiated this lawsuit on July 18, 2014. He filed his Second Amended Complaint on October 16, 2014 alleging claims of interference and retaliation in violation of the FMLA, violations of the ADA, and violations of the Pennsylvania Human Relations Act ("PHRA").[1] Following discovery, Mondelez filed a motion for summary judgment on July 27, 2015, and on that same date Capps filed a cross-motion for partial summary judgment on his FMLA interference claim.

By Memorandum and Order filed November 24, 2015, the District Court granted Mondelez's summary judgment motion and denied Capps' cross-motion. *See Capps v. Mondelez Global LLC*, 147 F. Supp.3d 327, 330 (E.D. Pa. 2015). The District Court granted summary judgment on Capps' FMLA interference claim due to Capps' inability to show that he was denied a benefit to which he was entitled under the FMLA. *Id.* at 335. The District Court granted summary judgment on Capps' FMLA retaliation claim because the record evidence showed that Mondelez based its decision to terminate Capps' employment on an honest belief that Capps misused that leave.[2] *Id.* at 330, 339-40. Finally,

---

[1] Because the PHRA is coextensive with the applicable federal law, the conclusions herein are equally applicable to Capps' claims under the PHRA. *See, e.g., Kelly v. Drexel Univ.*, 94 F.3d 102, 105 (3d Cir. 1996) (noting that "courts . . . generally interpret the PHRA in accord with its federal counterparts").

[2] In support of its holding that Mondelez's honest belief defeated Capps' FMLA claim, the District Court cited two non-precedential opinions, *Warwas v. City of Plainfield*, 489 F. App'x 585, 588 (3d Cir. 2012) (citing *Crouch v. Whirlpool Corp.*, 447 F.3d 984, 986 (7th Cir. 2006)) ("[A]n employer may defeat an FMLA claim if the discharge was based upon the employer's honest belief that the plaintiff either misused or failed to use her medical leave for the intended purpose."), and *Parker v. Verizon Pa., Inc.*, 309 F. App'x 551, 563 (3d

the District Court granted summary judgment on Capps' ADA claim because, although Capps requested and received intermittent leave under the FMLA, he never made a request for an accommodation under the ADA. *Id.* at 340.

## II. JURISDICTION AND STANDARD OF REVIEW

The District Court had jurisdiction under 28 U.S.C. §§ 1331 and 1367. We have jurisdiction under 28 U.S.C. § 1291.

Our review of the District Court's grant of summary judgment is plenary. *Seamans v. Temple Univ.*, 744 F.3d 853, 859 (3d Cir. 2014). A moving party is entitled to summary judgment if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute about a material fact is "genuine" only "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). All reasonable inferences must be drawn in favor of the nonmoving party. *Prowel v. Wise Bus. Forms, Inc.*, 579 F.3d 285, 286 (3d Cir. 2009).

## III. FMLA CLAIMS

The FMLA provides, in relevant part, that "eligible employees are entitled to 12 workweeks of leave during any 12-month period due to an employee's own serious health condition." *Ross v. Gilhuly*, 755 F.3d 185, 191 (3d Cir. 2014) (citing 29 U.S.C. § 2612(a)(1)). Under the FMLA, when an

---

Cir. 2009) (finding no FMLA violation where termination of employment was due to employer's honest belief that employee misrepresented his health condition in violation of the employer's Business Code of Conduct). Both *Parker* and *Warwas* rely on Seventh Circuit case law in support of application of the honest belief defense. *See, e.g., Crouch*, 447 F.3d at 986 ("[A]n employer's honest suspicion that the employee was not using his medical leave for its intended purpose is enough to defeat the employee's substantive rights FMLA claim.").

9

employee returns from such leave, the employer must restore the employee to the same or equivalent position held by the employee when the leave commenced, as well as restore the employee with equivalent benefits and conditions of employment. *Id.* (citing § 2614(a)).

We have previously explained:

> [W]hen employees invoke rights granted under the FMLA, employers may not "interfere with, restrain, or deny the exercise of or attempt to exercise" these rights.[3] Nor may employers "discharge or in any other manner discriminate against any individual for opposing any practice made unlawful."[4]

*Id.* (quoting *Lichtenstein v. Univ. of Pittsburgh Med. Ctr.*, 691 F.3d 294, 301 (3d Cir. 2012) (citations omitted)) (footnotes added). In addition, 29 C.F.R. § 825.220(c) prohibits employers "from discriminating or retaliating against an employee or prospective employee for having exercised or attempted to exercise FMLA rights." Here, Capps has alleged claims of FMLA interference and retaliation.

### (A) FMLA Retaliation Claim

Capps claims that Mondelez discriminated against him in violation of the FMLA by terminating his employment in retaliation for his use of FMLA leave. Since "FMLA retaliation claims require proof of the employer's retaliatory intent, courts have assessed these claims through the lens of employment discrimination law." *Lichtenstein*, 691 F.3d at 302. Accordingly, a claim such as Capps' FMLA retaliation claim is assessed under the burden-shifting framework established in *McDonnell Douglas Corp. v. Green*, 411 U.S.

---

[3] *See* 29 U.S.C. § 2615(a)(1).
[4] *See* 29 U.S.C. § 2615(a)(2).

10

792 (1973).[5]  *See Ross*, 755 F.3d at 193 (citing *Lichtenstein*, 691 F.3d at 302).  Under the *McDonnell Douglas* framework,

> a plaintiff must first establish a prima facie case of discrimination.  If the plaintiff succeeds, the defendant must articulate a legitimate, non-discriminatory reason for the adverse employment action.  The burden then shifts back to the plaintiff to prove, by a preponderance of the evidence, that the articulated reason was a mere pretext for discrimination.

---

[5] Capps briefly asserts in conclusory fashion that this case should be analyzed under the framework set forth in *Price Waterhouse v. Hopkins*, 490 U.S. 228 (1989) (Title VII mixed-motive gender discrimination case).  In particular, Capps' appellate brief includes a paragraph stating generally that the mixed-motive framework set forth in *Price Waterhouse* applies "when a plaintiff alleging unlawful termination presents direct evidence" of discrimination, s*ee* Appellant Br. 25 (emphasis omitted).  Even assuming there is a direct evidence requirement after *Desert Palace, Inc. v. Costa*, 539 U.S. 90 (2003), other than stating this general proposition, Capps fails to explain how the *Price Waterhouse* framework applies to the specific circumstances in this case.  In any event, to the extent that Capps is arguing that this case should be analyzed under the *Price Waterhouse* framework, as opposed to the *McDonnell Douglas* framework, based on allegedly direct evidence of discrimination, the record is bereft of evidence of discriminatory intent, much less evidence that "is so revealing of retaliatory animus that it is unnecessary to rely on the *McDonnell Douglas* . . . burden-shifting framework," *see Walden v. Georgia-Pacific Corp.*, 126 F.3d 506, 512 (3d Cir. 1997); *cf. Lichtenstein*, 691 F.3d at 302 ("leav[ing] for another day our resolution of whether the FMLA continues to allow mixed-motive claims in the wake of *Gross* [*v. FBL Fin. Servs., Inc.*, 557 U.S. 167 (2009)].").

11

*Ross*, 755 F.3d at 193 (citations omitted).

Here, the District Court found that, "when viewing the facts in a light most favorable to Capps, he is unable to sustain an FMLA retaliation claim." *See Capps*, 147 F. Supp.3d at 336. First, the District Court found that Capps cannot establish a prima facie case because "[h]e cannot demonstrate that the proper use of his FMLA leave – a protected activity – is causally connected to his termination."[6] *Id.* The Court further found that "[e]ven if Capps could establish a *prima facie* case, he has not adduced any meaningful evidence that would allow a reasonable factfinder to find pretext." *Id.*

As the District Court found, even assuming, *arguendo*, that Capps could establish a prima facie case of FMLA retaliation, Mondelez met its burden of demonstrating a legitimate, nondiscriminatory justification for Capps' discharge with evidence that Capps was terminated for his misuse of FMLA leave and dishonesty surrounding the leave in violation of Mondelez's policies. *See McDonnell Douglas*, 411 U.S. at 802; *Fuentes v. Perskie*, 32 F.3d 759, 763 (3d Cir. 1994). "FMLA retaliation claims require proof of the employer's **retaliatory *intent*.**" *Lichtenstein*, 691 F.3d at 302 (emphasis added). Where an employer provides evidence that the reason for the adverse employment action taken by the

---

[6] To succeed on an FMLA retaliation claim, Capps must show that (1) he invoked his right to FMLA-qualifying leave, (2) he suffered an adverse employment decision, and (3) the adverse action was causally related to his invocation of rights. *See Ross*, 755 F.3d at 193 (citing *Lichtenstein*, 691 F.3d at 302). In support of the finding of a lack of evidence demonstrating the required causal connection, the District Court pointed to the absence of an unusually suggestive temporal proximity between the protected activity and the termination, as well as the lack of evidence supporting a finding of a pattern of antagonism towards Capps for taking FMLA leave. *See Capps*, 147 F. Supp.3d at 336-37; *see also Abramson v. William Paterson Coll. of N.J.*, 260 F.3d 265, 288 (3d Cir. 2001) ("[O]ur case law has focused on two main factors in finding the causal link necessary for retaliation: timing and evidence of ongoing antagonism.").

employer was an honest belief that the employee was misusing FMLA leave, that is a legitimate, nondiscriminatory justification for the discharge. *See, e.g., Kariotis v. Navistar Int'l Transp. Corp.*, 131 F.3d 672, 677 (7th Cir. 1997) (quoting *Gustovich v. AT&T Communications, Inc.*, 972 F.2d 845, 848 (7th Cir. 1992)) (holding, where the employer provided evidence that it fired the employee because of an honest belief that the employee committed disability fraud, that "arguing about the accuracy of the employer's assessment is a distraction because the question is not whether the employer's reasons for a decision are '*right* but whether the employer's description of its reasons is *honest*'") (citation omitted).

In *Scruggs v. Carrier Corp.*, 688 F.3d 821 (7th Cir. 2012), where the evidence demonstrated that the employer held an honest suspicion that the employee was misusing his FMLA leave at the time it made the decision to terminate the employee, the Seventh Circuit found that the evidence could not support a conclusion that the employer intentionally discriminated against the employee for taking FMLA leave. *Id.* at 827. In affirming the District Court's Order granting summary judgment in favor of the employer, the Seventh Circuit in *Scruggs* pointed out that the employee requested and was granted leave, took his approved leave, and returned to work the following day, and it was not until after the employer had received evidence of misconduct that the employee was terminated. *Id.*; *see also Arrigo v. Link*, 836 F.3d 787, 796 (7th Cir. 2016) ("[T]he question is not whether [the employer] was correct to believe that [the employee] performed poorly, but rather whether he honestly believed that she did.").

Similarly, in *Pulczinski v. Trinity Structural Towers, Inc.*, 691 F.3d 996 (8th Cir. 2012), the Eighth Circuit affirmed the District Court's Order granting summary judgment in favor of an employer on an employee's FMLA discrimination claim on the basis of evidence of the employer's honest belief that the employee violated company policy and the lack of evidence showing that the employer's explanation was pretextual. *Id.* at 1007. The Eighth Circuit pointed out that this honest belief was a legitimate, nondiscriminatory reason for the action and that "[t]o prove that the employer's

explanation was false, the employee must show the employer did not truly believe that the employee violated company rules." *Id.* at 1003. In explaining the so-called "honest belief rule," the appellate court in *Pulczinski* stated that the "critical inquiry in discrimination cases like this one is not whether the employee actually engaged in the conduct for which he was terminated, but whether the employer in good faith believed that the employee was guilty of the conduct justifying discharge." *Id.* at 1002. The Eighth Circuit further explained: "[The employee] must present sufficient evidence that the employer acted with an intent to discriminate, not merely that the reason stated by the employer was incorrect. Taken alone, that the employer's belief turns out to be wrong is not enough to prove discrimination."[7] *Id.* at 1003.

In *Medley v. Polk Co.*, 260 F.3d 1202 (10th Cir. 2001), an employee claimed that her employer fired her for taking FMLA leave. In addressing an issue of first impression, *id.* at 1204, the Tenth Circuit held that the trial judge erred in failing to give a requested "Honest Belief Defense Charge" to the jury, since an employer's honest, albeit possibly mistaken, belief that an employee had committed fraud, defeats an employee's FMLA retaliation claim, *id.* at 1207-08. In support of its holding, the Tenth Circuit pointed to the

---

[7] The Sixth Circuit has adopted a modified version of the honest belief rule requiring employers to show that the employer's nondiscriminatory reason not only is honest but also is "reasonably based on particularized facts." *See Smith v. Chrysler Corp.*, 155 F.3d 799, 806 (6th Cir. 1998); *see also Wright v. Murray Guard, Inc.*, 455 F.3d 702, 708 (6th Cir. 2006). We join the Seventh and Eighth Circuits in explicitly declining to follow that modified approach to the honest belief rule. *See Pulczinski*, 691 F.3d at 1003; *Little v. Ill. Dep't of Revenue*, 369 F.3d 1007, 1012 n.3 (7th Cir. 2004) (citing *Flores v. Preferred Tech. Grp.*, 182 F.3d 512, 516 (7th Cir. 1999)). "Where the employment action is grounded in an honest and permissible reason, there can be no intent to discriminate unlawfully - even if that reason is not reasonably based on particularized facts." *Id.*; s*ee Pulczinski*, 691 F.3d at 1003 (rejecting the Sixth Circuit's modified version of the honest belief rule as inconsistent with the statute).

Seventh Circuit's reasoning in *Kariotis*:[8] "Discrimination statutes allow employers to discharge employees for almost any reason whatsoever (even a mistaken but honest belief) as long as the reason is not illegal discrimination. Thus when an employee is discharged because of an employer's honest mistake, federal anti-discrimination laws offer no protection." *Id.* at 1208 (quoting *Kariotis*, 131 F.3d at 680).[9]

Here, as described above, Mondelez provided evidence clearly supporting its legitimate, non-discriminatory

---

[8] *Kariotis*, which the Tenth Circuit has described as the "germinal case applying [the honest belief] principle in an FMLA setting," *see Medley*, 260 F.3d at 1208, affirmed summary judgment in favor of the employer on claims alleging that employment termination violated the ADA, Age Discrimination in Employment Act ("ADEA"), Employee Retirement Income Security Act ("ERISA"), and the FMLA. The Seventh Circuit held that the employer's honest belief that the employee had fraudulently accepted disability benefits following knee surgery defeated the aforementioned claims, whether or not the employer was mistaken in concluding that the employee actually had committed fraud. *Kariotis*, 131 F.3d at 674.

[9] The authorities applying the "honest belief" rule are consistent with our precedent in comparable contexts. *See Brewer v. Quaker State Oil Ref. Corp.*, 72 F.3d 326, 332 (3d Cir. 1995) (quoting *McCoy v. WGN Continental Broad. Co.*, 957 F.2d 368, 373 (7th Cir. 1992)) (noting, in the context of an ADEA case, that we "do not sit as a super-personnel department that reexamines an entity's business decisions . . . [O]ur inquiry is limited to whether the employer gave an honest explanation of its behavior"); *see also Fuentes*, 32 F.3d at 765 (holding, in a Title VII case, that a plaintiff cannot discredit an employer's proffered legitimate, non-discriminatory reason for termination by "simply show[ing] that the employer's decision was wrong or mistaken, since the factual dispute at issue is whether discriminatory animus motivated the employer, not whether the employer is wise, shrewd, prudent, or competent," and explaining that a plaintiff must instead produce sufficient evidence to permit a reasonable factfinder to infer that the employer did not actually act for the asserted non-discriminatory reason).

explanation for why Capps was discharged – its honest belief that Capps misused his FMLA leave and was otherwise dishonest in violation of Mondelez's policies. Following Capps' AVN diagnosis in 2002 and his bilateral hip replacements in 2004, Capps was continuously recertified for FMLA leave during his tenure at Mondelez approximately every six months through early 2014. There is no indication that any of Capps' requests for FMLA leave were denied or that he was prohibited from returning to work after taking his approved FMLA leave. Indeed, Capps returned to the same position with the same benefits each time he returned from taking his leave, and he continued to take intermittent FMLA leave without issue through the remainder of 2013. Moreover, there is no indication of any animus on the part of Mondelez related to Capps taking FMLA leave prior to receiving notice of Capps' arrest and conviction.

It was not until Oxenford received the newspaper article in 2014 alerting him to Capps' DUI arrest and conviction, that Oxenford began to investigate Capps' attendance record to determine if any of his FMLA leave coincided with the dates related to his arrest and conviction. Further, the undisputed evidence indicates that when Oxenford and McAvoy reviewed the criminal court docket related to Capps' DUI case, the docket reflected that the arrest date and "court dates" appeared to coincide with days on which Capps had taken FMLA leave. Although Capps argues that Mondelez was mistaken in its belief that Capps misused his leave or was otherwise dishonest with regard to the leave taken, there is a lack of evidence indicating that Mondelez did not honestly hold that belief. Accordingly, in light of insufficient evidence for a reasonable factfinder to conclude that Mondelez's legitimate, nondiscriminatory explanation for terminating Capps' employment was a pretext, the District Court properly granted summary judgment on Capps' FMLA retaliation claim. *See McCoy*, 957 F.2d at 373 ("[T]he issue of pretext does not address the correctness or desirability of reasons offered for employment decisions. Rather, it addresses the issue of whether the employer honestly believes in the reasons it offers.").

16

## (B) FMLA Interference Claim

To make a claim of interference under the FMLA, a plaintiff must establish:

> (1) he or she was an eligible employee under the FMLA; (2) the defendant was an employer subject to the FMLA's requirements; (3) the plaintiff was entitled to FMLA leave; (4) the plaintiff gave notice to the defendant of his or her intention to take FMLA leave; and (5) the plaintiff was denied benefits to which he or she was entitled under the FMLA.

*Ross*, 755 F.3d at 191-92 (citation omitted); *see also Sommer v. Vanguard Grp.*, 461 F.3d 397, 399 (3d Cir. 2006) (observing that an interference claim requires an employee to show that he was not only entitled to FMLA benefits but also that he was denied those benefits). Unlike an FMLA retaliation claim, "[a]n interference action is not about discrimination, it is only about whether the employer provided the employee with the entitlements guaranteed by the FMLA." *Callison v. City of Phila.*, 430 F.3d 117, 120 (3d Cir. 2005); *see Scruggs,* 688 F.3d at 825 (quoting *Shaffer v. Am. Med. Ass'n*, 662 F.3d 439, 443 (7th Cir. 2011)) ("An [FMLA] interference claim does not require an employee to prove discriminatory intent on the part of the employer; rather, such a claim 'requires only proof that the employer denied the employee his or her entitlements under the Act.'").[10] Accordingly, "[b]ecause [an FMLA interference action] is not about discrimination, a *McDonnell-Douglas*

---

[10] Capps' brief acknowledges this requirement. *See* Appellant Br. 18 (citing *Callison*, 430 F.3d at 119) ("In order to state a claim for interference under the FMLA, a plaintiff must show that the plaintiff was denied benefits to which he or she was entitled under the Act.").

burden-shifting analysis is not required." *Sommer*, 461 F.3d at 399.

Here, the District Court found that Capps' FMLA interference claim failed because Capps was unable to satisfy the fifth requirement – that he was denied a benefit to which he was entitled under the FMLA. *See Capps*, 147 F. Supp.3d at 335. In support of its decision, the District Court cited *Ross*, where we found that "[b]ecause [the employee] received all of the benefits to which he was entitled by taking leave and then being reinstated to the same position from which he left, and thus cannot satisfy the fifth prong of the interference analysis, he fails to make a prima facie showing of interference." *See Ross*, 755 F.3d at 192. Capps returned from his FMLA leave, including the February 14 and 15, 2013 FMLA leave, to the same position and same benefits. (JA 13, 48-49.)

Capps argues that his termination amounted to a deprivation of benefits and therefore interference under the FMLA. "[W]e have made it plain that, for an interference claim to be viable, the plaintiff must show that FMLA benefits were actually withheld." *See Ross*, 755 F.3d at 192 (citing *Callison*, 430 F.3d at 119). Here, Capps is unable to show that. Under the specific circumstances in this case, since he is unable to point to evidence in the record indicating that he was denied a benefit to which he was entitled under the FMLA, Mondelez was entitled to summary judgment on the FMLA interference claim.[11]

---

[11] Capps points to *Erdman v. Nationwide Ins. Co.*, 582 F.3d 500 (3d Cir. 2009), in support of the contention that the facts in this case constitute both FMLA retaliation and interference claims. *Id.* at 509 (holding that firing an employee for a valid FMLA leave request may constitute interference with the employee's FMLA rights as well as retaliation against the employee). However, *Erdman* is distinguishable from this case. In *Erdman*, the employee "requested FMLA leave but was fired before the leave was scheduled to begin," *i.e.*, before the employee actually took the leave. *Id.* Unlike Capps' case, the issue in *Erdman* was whether an employee must *take* FMLA leave to prove a *retaliation* claim where the employee requested FMLA leave but was fired before

18

## IV.  ADA CLAIM

Finally, Capps claimed in the District Court that Mondelez failed to accommodate his disability as required under the ADA.[12]  *See Capps*, 147 F. Supp.3d at 340.  The District Court found that this claim "fails as a matter of law because Capps never made a request for an accommodation."  *Id.*

On appeal, Capps devotes only one paragraph to his ADA failure-to-accommodate claim.  Specifically, he argues that "[r]equests for intermittent leave *may* be protected by the ADA" and that a request for FMLA leave does not bar an ADA retaliation claim.  *See* Appellant Br. 29-30 (emphasis added).[13]

---

actually using the leave.  *Id.* at 508.  It is not surprising that such facts may constitute an interference claim and a retaliation claim since the employee was fired *before* receiving the benefit of actually taking the leave or being reinstated to the same position following the leave.  Here, of course, Capps requested the FMLA leave in question, that request was approved, Capps took the leave in question, and Capps was reinstated to the same or equivalent position after taking the approved leave.

[12] Capps also included in his Second Amended Complaint claims for retaliation and discrimination under the ADA, but he does not specifically pursue those claims in his appellate brief.  In any event, as with Capps' FMLA retaliation claim, the *McDonnell Douglas* framework applies, and his ADA retaliation and discrimination claims fail for the same reason – a lack of evidence that Mondelez's legitimate, non-discriminatory reason for firing Capps was a pretext.  *See, e.g., Pulczinski*, 691 F.3d at 1003-04, 1007 (applying the honest belief rule to an ADA claim).

[13] While the Equal Employment Opportunity Commission ("EEOC"), as *amicus curiae*, takes no position on the ultimate disposition of this case, *see* EEOC Br. 2 n.1, the EEOC requests that this Court hold that a request for leave under

Mondelez responds that "Capps' one-paragraph placeholder [in his brief] should be construed as a waiver of any argument related to the ADA." *See* Appellee Br. 27. Furthermore, Mondelez contends that the District Court properly concluded that Capps' request for FMLA leave, standing alone, could not serve as an accommodation under the ADA. It is unnecessary to address whether Capps waived his ADA claim on appeal, since, even assuming the claim was not waived, it is clearly without merit.

We recognize that a request for FMLA leave may qualify, under certain circumstances, as a request for a reasonable accommodation under the ADA, *see* 29 C.F.R. § 825.702(c)(2), and to the extent that the District Court held otherwise, that was error. However, in this case, even assuming that Capps had a disability as defined by the ADA, that Capps was a qualified individual under the ADA, and that Capps' request for intermittent FMLA leave also constituted a request for a reasonable accommodation under the ADA, the record does not support a view that Mondelez discriminated against Capps under the ADA or refused to accommodate any such request.

A plaintiff bringing an ADA failure-to-accommodate claim must establish: "(1) he was disabled and his employer knew it; (2) he requested an accommodation or assistance; (3) his employer did not make a good faith effort to assist; and (4) he could have been reasonably accommodated." *Armstrong v. Burdette Tomlin Mem'l Hosp.*, 438 F.3d 240, 246 (3d Cir. 2006);[14] *see Colwell v. Rite Aid Corp.*, 602 F.3d 495, 504 (3d Cir. 2010) (citing *Williams v. Phila. Housing Auth. Police Dep't*, 380 F.3d 751, 772 (3d Cir. 2004)). Here, even assuming, *arguendo,* that Capps' requests for

_____

both the FMLA and the ADA is not inherently contradictory, *id.* at 21-22.

[14] Although *Armstrong* involved a claim under the N.J. Law Against Discrimination ("LAD"), "[t]he requirements for failure to accommodate claims under New Jersey's LAD have been interpreted in accordance with the [ADA]." *Armstrong*, 438 F.3d at 246 n.12.

20

intermittent FMLA leave constituted requests for a reasonable accommodation under the ADA as well, Mondelez continued to approve Capps' requested leave, and indeed, Capps took the requested leave. Thus, Mondelez provided and Capps received the accommodation he asked for. There is clearly a lack of evidence to show that Mondelez did not make a good faith effort in accommodating Capps' request for intermittent leave. Since the record here does not support any failure to accommodate Capps, we affirm the District Court's grant of summary judgment on Capps' failure-to-accommodate claim under the ADA. *See Oss Nokalva, Inc. v. European Space Agency*, 617 F.3d 756, 761 (3d Cir. 2010) (observing that we may affirm a judgment on any ground apparent from the record, even if the District Court did not reach it).

## IV. CONCLUSION

For the foregoing reasons, we affirm the District Court's Order granting summary judgment in favor of Mondelez.

21