NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

———————

No. 17-3056

———————

TRACY A. REAGAN,
                                        Appellant
v.

CENTRE LIFELINK EMERGENCY MEDICAL SERVICES, INC.

———————

Appeal from the United States District Court
for the Middle District of Pennsylvania
(D.C. Civil Action No. 4-15-cv-01390)
District Judge: Honorable Matthew W. Brann

———————

Submitted Under Third Circuit L.A.R. 34.1(a)
May 2, 2018

Before: SMITH, *Chief Judge*, HARDIMAN and RESTREPO, *Circuit Judges*

(Opinion filed: May 24, 2019)

———————

OPINION[*]

———————

RESTREPO, *Circuit Judge*

---

[*] This disposition is not an Opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

Tracy A. Reagan challenges the District Court's Order granting summary judgment in favor of Centre LifeLink Emergency Medical Services, Inc. ("LifeLink") while denying her cross-motion for summary judgment. Specifically, Reagan argues that the District Court erred in granting LifeLink's summary judgment motion on her claim that LifeLink interfered with her rights under the Family and Medical Leave Act ("FMLA"), 29 U.S.C. § 2601 *et seq.* For the reasons that follow, we affirm.

## I.

Reagan held the role of training director at LifeLink until her termination on July 23, 2013. Throughout the course of her employment, Reagan reported to Scott Rawson, LifeLink's Executive Director.

In November 2011, while employed by LifeLink, Reagan started her own business, called Red Diamond Safety ("Red Diamond"). Through Red Diamond, Reagan began offering CPR certification classes and other services similar to those offered by LifeLink. In May 2012, just six months after Reagan had established Red Diamond, Rawson became aware of Reagan's side business. LifeLink then asked Reagan to sign a non-compete agreement as a stipulation to continue working as training director. Until that time, Reagan had never been provided with any type of employment contract from LifeLink.

Despite signing the non-compete agreement, Reagan admitted to using materials from LifeLink for services provided by Red Diamond. An employee at LifeLink assisted Reagan in obtaining at least 15 of LifeLink's CPR certification cards to distribute to

2

participants of Red Diamond's classes. Additionally, Reagan took possession of several of LifeLink's manikins in March 2012 after they were damaged in a flood. Rather than removing the manikins from the office and destroying them, as required by LifeLink's insurance policy, Reagan kept the manikins in her home.

On June 9, 2013, while Reagan was on vacation, she was injured in a bicycle accident. As a result of a dislocated hip and head injury that Reagan suffered, she was placed on FMLA leave scheduled to run from June 12 through July 29, 2013.

On July 3, 2013, while Reagan was on FMLA leave, Rawson became aware of Reagan's intent to use the flood-damaged manikins for Red Diamond services, in addition to other violations of the non-compete agreement. Rawson then met with Rodney Beard, LifeLink's general counsel, and Jeff Krauss, one of LifeLink's human resources consultants, to discuss these revelations. On July 10, 2013, Beard sent a letter to Reagan requesting explanations within 10 days for these apparent violations.

Reagan replied to Beard's letter via email on July 21, 2013, after LifeLink's imposed deadline of July 20, 2013 had expired. Moreover, Reagan's late reply did not answer any of LifeLink's inquiries, but rather, stated that she was in the process of seeking legal counsel. Two days later, on July 23, 2013, Beard emailed Reagan and informed her that LifeLink found her response to be insufficient and not responsive to the requests made in Beard's previous email. Accordingly, Rawson sent Reagan a termination letter later that day for her failure to reply in a timely and responsive manner. Reagan's termination occurred six days before her FMLA leave was set to expire.

**II.**[1]

To make a claim of interference under the FMLA, a plaintiff must establish:

> (1) he or she was an eligible employee under the FMLA; (2) the defendant was an employer subject to the FMLA's requirements; (3) the plaintiff was entitled to FMLA leave; (4) the plaintiff gave notice to the defendant of his or her intention to take FMLA leave; and (5) the plaintiff was denied benefits to which he or she was entitled under the FMLA.

*Capps v. Mondelez Global, LLC*, 847 F.3d 144, 155 (3d Cir. 2017) (quoting *Ross v. Gilhuly*, 755 F.3d 185, 191 (3d Cir. 2014)). The only issue in dispute on appeal is whether Reagan can show that LifeLink denied her FMLA benefits to which she was entitled.

"[T]he FMLA does not provide employees with a right against termination for a reason other than interference with rights under the FMLA." *Sarnowski v. Air Brooke Limousine, Inc.*, 510 F.3d 398, 403 (3d Cir. 2007); *see id.* at 401 ("In order to assert a claim of interference, an employee must show . . . that his employer *illegitimately* prevented him from obtaining those benefits.") (emph. added). Therefore, an employer who shows that it terminated an employee for reasons unrelated to the exercise of her

---

[1] We have appellate jurisdiction under 28 U.S.C. § 1291 and review the District Court's grant of summary judgment *de novo. Bryan v. United States*, 913 F.3d 356, 360 (3d Cir. 2019). A moving party is entitled to summary judgment as a matter of law if "there is no genuine dispute as to any material fact." Fed. R. Civ. P. 56(a). A dispute as to a material fact is "genuine" only "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). All reasonable inferences must be drawn in favor of the nonmoving party. *Prowel v. Wise Bus. Forms, Inc.*, 579 F.3d 285, 286 (3d Cir. 2009).

4

FMLA rights can defeat a claim of FMLA interference. *Lichtenstein v. Univ. of Pittsburgh Med. Ctr.*, 691 F.3d 294, 312 (3d Cir. 2012) (citing *Sarnowski*, 510 F.3d at 403).

Here, there is a lack of evidence indicating that LifeLink's decision to terminate Reagan for failing to respond to Beard's inquiries—which raised concerns about Reagan's apparent violations of the non-compete agreement and her dishonesty involving the manikins—in a timely and meaningful way was unrelated to Reagan's exercise of her rights under the FMLA. Therefore, the District Court was correct in concluding that Reagan was unable to show that LifeLink interfered with her rights under the FMLA and in granting summary judgment in LifeLink's favor.

Reagan argues that LifeLink placed an unreasonable performance expectation on her when it requested that she respond to Beard's letter within 10 days, given the medical restrictions established by her FMLA certificate. However, "for an interference claim to be viable, the plaintiff must show that FMLA benefits were actually withheld." *Capps*, 847 F.3d at 156 (citing *Callison v. City of Phila.*, 430 F.3d 117, 119 (3d Cir. 2005)).

Furthermore, while employers cannot generally require their employees on FMLA leave to remain on-call or to continue working, "there is no right in the FMLA to be 'left alone.'" *Callison*, 430 F.3d at 121. For example, in *Callison*, we concluded that termination of Callison's employment for non-compliance with the City's call-in requirement did not constitute FMLA interference. Similarly, here the termination of Reagan's employment due to Reagan's failure to timely and meaningfully respond to

5

LifeLink's one-time, discrete inquiry which was unrelated to the exercise of her FMLA rights does not constitute FMLA interference.

For the foregoing reasons, we affirm the District Court's Order granting LifeLink's summary judgment motion.