NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 20-2980
_____

MICHELLE IAPICHINO,

Appellant

v.

HACKENSACK UNIVERSITY MEDICAL CENTER;
HACKENSACK MERIDIAN HEALTH, INC.; JANE DOE I-V
(these names being fictitious as their present identities are unknown);
XYZ CORPORATION I-V (these names being fictitious as their present
identities are unknown)

_____

On Appeal from the United States District Court
for the District of New Jersey
(D.C. Civ. No. 2-17-cv-06521)
Honorable John M. Vazquez, United States District Judge

_____

Submitted under Third Circuit L.A.R. 34.1(a)
June 2, 2021

BEFORE: HARDIMAN, PHIPPS , and COWEN, Circuit Judges

(Filed: July 27, 2021)
_____

OPINION[*]

_____

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not
constitute binding precedent.

_____

COWEN, <u>Circuit</u> <u>Judge</u>.

Plaintiff Michelle Iapichino appeals from the order of the United States District Court for the District of New Jersey denying her motion for partial summary judgment and granting the motion for summary judgment filed by Defendants Hackensack University Medical Center ("HUMC") and Hackensack Meridian Health, Inc. We will affirm.

I.

Iapichino, who was formerly employed as a registered nurse and supervisor at the HUMC, filed this action in state court following her termination. She alleged claims of failure to accommodate and disability discrimination under the New Jersey Law Against Discrimination ("NJLAD") as well as retaliation and interference claims pursuant to the Family Medical Leave Act ("FMLA"). Defendants removed this action to the District Court. Subsequently, Iapichino moved for partial summary judgment on her FMLA interference (and related liquidated damages) claims, and Defendants filed a motion for summary judgment in their favor on all of her claims.

The District Court denied Iapichino's motion for partial summary judgment, granted Defendants' summary judgment motion, and ordered the case to be dismissed. In short, it determined that, with respect to the NJLAD and FMLA retaliation claims, Defendants articulated a legitimate, non-discriminatory reason for Iapichino's termination (namely that she was fired because of her on-duty impairment and positive drug test for illegal and non-prescribed substances) and that Iapichino failed to offer

2

evidence from which a reasonable jury could determine that this reason was a pretext. With respect to her interference claim under the FMLA, the District Court concluded that "Plaintiff does not provide evidence demonstrating that she was entitled to FMLA leave before Defendants decided to terminate her, or that Defendants actually interfered with her FMLA rights, assuming that Plaintiff was even entitled to such leave." Iapichino v. Hackensack Univ. Med. Ctr., Civil Action No. 17-6521, 2020 WL 5525511, at *8 (D.N.J. Sept. 15, 2020).

## II.

It is undisputed that Iapichino's NJLAD and FMLA retaliation claims implicate the well-established McDonnell Douglas burden-shifting framework.[1] See, e.g., Capps v. Mondelez Global, LLC, 847 F.3d 144, 151-52 (3d Cir. 2017); Victor v. State, 4 A.3d 126, 140-41 (N.J. 2010). In particular, the District Court disposed of her claims under the "pretext" stage of the framework, considering whether plaintiff presented evidence of "such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its actions that a reasonable factfinder could rationally find them unworthy of credence." Iapichino, 2020 WL 5525511, at *4 (quoting Howard v. Cnty. of Monmouth, No. 16-5524, 2019 WL 2710791, at *5 (D.N.J. June 28, 2019)). Iapichino argues that "the Court incorrectly held that there existed no

---

[1] The District Court had subject matter jurisdiction under 28 U.S.C. §§ 1331 and 1367(a), and we have appellate jurisdiction pursuant to 28 U.S.C. § 1291. We apply a plenary standard of review to a district court's summary judgment disposition. See, e.g., Giles v. Kearney, 571 F.3d 318, 322 (3d Cir. 2009). As the District Court recognized, summary judgment must be granted if the movant shows there is no genuine dispute as to any material fact and that it is entitled to judgment as a matter of law. See, e.g., Fed. R. Civ. P. 56(a).

genuine issue of material fact in regards to appellant's establishment of pretext relating to HUMC's non-discriminatory and non-retaliatory reasons for termination and denial of continued accommodation." (Appellant's Brief at 10-11.) According to her, the District Court "generally ignored clear factual issues to be decided by the jury in regards to appellant's clear proof that the alleged proffered reasoning behind such actions were not only disputed and inconsistent, but also that the application of HUMC's policies was inconsistent as to create genuine questions regarding their legitimacy as to establish pretext." (Id. at 11.)

However, the District Court properly determined that "Plaintiff offers no evidence by which a reasonable jury could determine that HUMC's stated reason for the termination was a pretext." Iapichino, 2020 WL 5525511, at *4. The District Court acknowledged that "Plaintiff points to her supervisors' statements that they did not recall Plaintiff being impaired at work," id. at *5 (citing Plaintiff's Supplemental Statement of Disputed Facts at 12-13), and Iapichino asserts that accordingly "the suggestion that appellant was terminated for being impaired at work, while offered for the *sole* reason for the termination by decisionmaker Sandra Richard [a human resources manager], is utterly false and undoubtedly pretextual" (Appellant's Brief at 27 (citing A129, A130, A136, A144-A145)). Nevertheless, the Disciplinary Action Notice (signed by Iapichino's manager, Lisa Archer, and Kelly Briggs, Iapichino's supervisor) stated that, "[a]s a result of the Occupational Medicine's findings [i.e., the positive drug test results], Michelle has been deemed not fit for duty and is being terminated effective her last day worked" (A104). See, e.g., Iapichino, 2020 WL 5525511, at *4 ("While this [the supervisors'

4

failure to recall Plaintiff being impaired at work] may be true, it does not change the fact that Plaintiff tested positive for unprescribed and illegal drugs through a drug test that was administered during work hours on November 25, 2015." (citing Defendants' Statement of Undisputed Material Facts at 4; A84)). Iapichino further contends that the HUMC's drug use policy was administered in a discriminatory fashion, but she "fails to provide any details by which a jury could infer that the Policy was actually applied differently to her." Id. In particular, the written policy states that the safe harbor for self-disclosure must be invoked "prior to being requested to submit to reasonable suspicion testing" and that "[e]mployees may not use this self-identification provision to avoid taking a test when required under this policy or to avoid being disciplined for receiving a positive test result or for refusing to submit to a test." (SA38.) Iapichino did not indicate that her test would be positive until after she was required to submit to it, and she "fails to provide any examples of a similarly situated nurse who was not terminated after a positive reasonable suspicion drug test." Iapichino, 2020 WL 5525511, at *4.

Iapichino further challenges the District Court's disposition of her claim of interference under the FMLA. The District Court determined that, among other things, "even if Plaintiff did have a serious health condition that entitled her to leave under the FMLA, Defendants were permitted to terminate Plaintiff for violating the [drug use] Policy" and that, "even assuming that Plaintiff was entitled to FMLA leave, Plaintiff does not establish that Defendants interfered with her requested leave." Id. at *8. We have already explained that the District Court appropriately disposed of Iapichino's assertions of discrimination with respect to the drug use policy and its application. In turn, 29

5

C.F.R. § 825.119(b) provides that "[t]reatment for substance abuse does not prevent an employer from taking employment action against an employee" and "the employee may be terminated [pursuant to an established policy applied in a non-discriminatory fashion and communicated to all employees] whether or not the employee is presently taking FMLA leave." "In proving that [the employer] interfered with her rights, [the employee] does not need to prove that [the employer] acted with discriminatory intent." Lichtenstein v. Univ. of Pittsburgh Med. Ctr., 691 F.3d 294, 312 (3d Cir. 2012) (citing Sommer v. The Vanguard Grp., 461 F.3d 397, 399 (3d Cir. 2006); Callison v. City of Philadelphia, 430 F.3d 117, 120 (3d Cir. 2005)). However, the statute "does not provide employees with a right against termination for a reason other than interference with rights under the FMLA." Id. (quoting Sarnowski v. Air Brooke Limousine, Inc., 510 F.3d 398, 403 (3d Cir. 2007)) (explaining that employer can defeat claim by demonstrating that employee was terminated for reasons unrelated to exercise of FMLA rights). In any event, Iapichino initially requested FMLA leave through December 13, 2015, providing an anticipated return date of December 14, 2015. Although the decision to terminate was made on December 3, 2015, HUMC did not actually terminate her employment until December 15, 2015. (See, e.g., Appellees' Brief at 22 ("Even though [HUMC's leave administrator] denied her FMLA leave request, Appellees gave her the job protection benefit of the leave.").) In turn, the request for additional time was not made until December 17, 2015. Accordingly, "with the information provided to Defendants at the time, HUMC terminated Plaintiff after her requested period of leave ended." Iapichino, 2020 WL 5525511, at *8.

6

## III.

For the foregoing reasons, we will affirm the order of the District Court.