**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 21-1235
_____

PEGGY SNYDER,
                                        Appellant

v.

DOWDUPONT, INC., a Delaware Corporation, and
E.I. DU PONT DE NEMOURS and COMPANY
_____

On Appeal from the United States District Court
for the District of Delaware
(D.C. No. 1:18-cv-01266)
District Judge: Honorable Colm F. Connolly
_____

Submitted Under Third Circuit L.A.R. 34.1(a)
on January 13, 2022

Before: AMBRO, BIBAS, and ROTH, *Circuit Judges*

(Filed: May 10, 2022)
_____

**OPINION**[*]
_____

BIBAS, *Circuit Judge*.

Employers may not punish employees for taking medical leave, but they need not abide

abuse. Here, an employer credibly thought that an employee was abusing her many leaves,

_____

[*] This disposition is not an opinion of the full Court and, under I.O.P. 5.7, is not binding
precedent.

so it surveilled and then fired her. Because she does not show that the employer's reasons were pretexts for punishing her, we will affirm summary judgment for the employer.

# I. BACKGROUND

Peggy Snyder started working at DuPont in 1997. She worked at DuPont's Tralee Park plant, where she made and inspected rubber parts. Her job was "[m]ostly" sedentary. JA 163–64.

Sadly, Snyder was plagued by migraines and sinus infections. Despite many surgeries, her ailments persisted. She missed work often, taking roughly twenty medical leaves. Each time, DuPont granted her leave request, paid her salary under its short-term disability plan, and let her return to work with "the same salary and benefits." JA 872.

But DuPont started to suspect that Snyder was abusing its disability policy. It noticed that Snyder had a "pattern of high absences that seemed to coincide with the maximum amount of [federally mandated medical-leave] time." JA 336; *accord* JA 814–15. Plus, employees reported seeing her out and about while she was on medical leave, supposedly recuperating. One even spotted her boating.

So around 2014, DuPont hired a private investigator to surveil Snyder. After two weeks, he turned up "nothing worthwhile." JA 747. Yet DuPont remained suspicious and kept surveilling her, on and off, over the next two years.

In 2016, DuPont's suspicions were confirmed. After foot surgery, Snyder took about three months' leave. She told DuPont's nurse that she was not supposed to drive or put any weight on her foot. Yet DuPont heard that she had been seen "walking around" at a party.

2

JA 716–17. So it resumed surveillance that spring and recorded Snyder driving and walking with a single crutch.

By late June, Snyder was back at work part time. Just over a month later, she worked normal shifts for a few days. But soon, she reported severe symptoms and was put back on reduced hours. Around that time, she told DuPont that her eight-hour shifts were "killing" her and complained of foot pain and swelling. JA 160.

In the meantime, DuPont kept getting troubling surveillance reports. Snyder was re-peatedly seen walking without apparent difficulty. After one short shift, she was spotted leaving a Wal-Mart after getting a manicure and pedicure. And when she returned home, she was then seen riding a lawnmower for about an hour. In DuPont's view, these activities belied her claim that she could not work.

So DuPont fired her. As its human-resources manager explained, it did so because she had lied about her symptoms and "used DuPont disability leave for purposes that [were] inconsistent with her recovery and counter to her doctor's orders." Supp. App. 73.

Snyder sued DuPont under the Family Medical Leave Act (FMLA), alleging retaliation. DuPont, she said, had punished her by surveilling and firing her because she had taken sick leave under the Act. The District Court granted summary judgment for DuPont, holding that she had not made a prima facie case of FMLA retaliation. But even if she had, ruled the court, she had failed to show that DuPont's stated reasons were pretexts. She now ap-peals to us. We review de novo, viewing the facts in the light most favorable to Snyder and drawing all reasonable inferences in her favor. *Tundo v. County of Passaic*, 923 F.3d 283, 286–87 (3d Cir. 2019).

3

## II. FMLA RETALIATION CLAIMS

Employers may not "retaliat[e] against an employee … for … exercis[ing] FMLA rights." 29 C.F.R. § 825.220(c). Because Snyder's case is based on circumstantial evidence, we ask three questions:

1) Did Snyder make out a prima facie case of retaliation?

2) If she did, has DuPont offered a legitimate, non-retaliatory reason for its adverse action?

3) If DuPont did, has Snyder proven, by a preponderance of the evidence, that DuPont's stated reason was just a pretext to retaliate?

*Capps v. Mondelez Glob., LLC*, 847 F.3d 144, 152 & n.5 (3d Cir. 2017); *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802–04 (1973); *Lichtenstein v. Univ. of Pittsburgh Med. Ctr.*, 691 F.3d 294, 302 (3d Cir. 2012). Snyder never disputes that this three-step framework applies.

Snyder raises two adverse employment actions: DuPont's surveillance and its firing her. Firing, of course, is an adverse employment action. Though we question whether surveillance by itself is too, DuPont conceded that point. So we assume (without deciding) that it was and analyze each action separately.

We also need not decide whether Snyder made out her prima facie case. Even if she did, DuPont had legitimate reasons to surveil and fire her, and she fails to show that those were pretexts.

4

### III. DUPONT'S SURVEILLANCE WAS NOT PRETEXTUAL

**A. DuPont surveilled Snyder because it thought she was abusing her leaves**

DuPont says it had Snyder watched because it worried that she was abusing her medical leaves. That is a legitimate reason to surveil her. *See Callison v. City of Philadelphia*, 430 F.3d 117, 121 (3d Cir. 2005).

Several DuPont employees reported that Snyder was boating and doing other physical activities inconsistent with her medical leave. Plus, Snyder kept maxing out her medical leaves, raising suspicion. The burden thus shifts to Snyder to show that DuPont's claimed concern was a pretext for retaliation.

**B. Snyder fails to show that DuPont's reason was pretextual**

Snyder does not carry that burden. At summary judgment, she could do that either of two ways. She could point evidence from which a jury could reasonably "disbelieve" DuPont's explanation. Or she could point to evidence from which it could find that retaliation was "more likely than not a motivating" factor. *Lupyan v. Corinthian Colls., Inc.*, 761 F.3d 314, 324 (3d Cir. 2014). But she does neither.

First, Snyder points to DuPont's repeated assurances that she met its "High Ethical Standards" as proof that DuPont was not suspicious. But the positive marks are no "contradiction[ ]" in DuPont's story. *Fuentes v. Perskie*, 32 F.3d 759, 765 (3d Cir. 1994). DuPont took pains to hide its suspicions, keeping its surveillance covert. Thus, the positive reviews do not discredit DuPont's claim that it suspected her.

Next, Snyder attacks DuPont's explanation for resuming surveillance in 2016. DuPont says it started watching her again because an employee reported seeing Snyder at a pool

party. As DuPont explained, "she should be recuperating and that's not recuperating." JA 718. Snyder responds that the employee never mentioned a *pool* party specifically. Still, his unrebutted testimony supports the gist of DuPont's story: he "think[s]" he told a manager that Snyder was spotted at a party. JA 833. Plus, the manager confirmed it. So this attack fails too.

## IV. SNYDER'S FIRING WAS NOT PRETEXTUAL

### A. DuPont fired Snyder for lying and abusing her leaves

DuPont says it fired Snyder both for lying about her disability and for abusing medical leave. These are legitimate reasons. *Capps*, 847 F.3d at 152. And DuPont offers ample evidence in support. For instance, Snyder admits that she told DuPont that she could not drive or put weight on her foot. Yet she was repeatedly caught violating those restrictions and walking with ease. So the burden shifts back to Snyder.

### B. Snyder does not show that DuPont's justifications were pretextual

Snyder fails to show that DuPont's reasons were pretexts. Only two objections are worth discussing. First, Snyder says she could not have abused her leave because she complied with her medical restrictions, which were more flexible than DuPont describes. For support, she points to a note from her doctor in May 2016, saying she could start doing more physical activity "[a]s [t]olerated." Appellant's Br. at 30.

True, that form suggests that Snyder's medical restrictions were flexible. Yet even if DuPont had this form, it had ample reason to think they were not flexible: Snyder herself reported that she "c[ould] not drive" nor put weight on her foot. JA 154. Plus, other medical documents corroborated her account. *See, e.g.*, Supp. App. 10, 17. Given that, DuPont

reasonably thought that she should have been back at her "[m]ostly" sedentary job by then. JA 949.

Second, Snyder argues that her manager's testimony proves pretext. He testified thus:

> There were times that Peggy came back to work. And had she just stayed at work and everything would have been fine. We wouldn't be here today. But then she would have immediately saved the minimum, the minimum amount of time to get the FMLA clock reset and then immediately go back out and then she would return to work again.

JA 829.

Though Snyder reads the second and third sentences as showing pretext, we disagree. In context, her manager was explaining that DuPont had fired her for not just one or two leaves, but an incessant pattern of abuse. His statement fits with that reasoning. Plus, he made it at a deposition nearly four years later, long after she was fired. No reasonable jury could read this lone, belated comment as proving retaliation.

\* \* \* \* \*

Because DuPont has offered legitimate reasons for surveilling and firing Snyder and she has not shown pretext, we will affirm the District Court's grant of summary judgment.

7