**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 17-3824
_____


MICHAEL SIMONS,

                              Appellant

v.

BOSTON SCIENTIFIC; GARY LICKOVITCH;
SAMUEL CONAWAY; JOHN DOES 1-30

_____


On Appeal from the United States District Court
for the District of New Jersey
(District Court No. 2-15-cv-07519)
District Judge:  Honorable Madeline C. Arleo

_____



Submitted under Third Circuit LAR 34.1(a)
on November 9, 2018


(Opinion filed: March 22, 2019)


Before:  AMBRO, SCIRICA and RENDELL, <u>Circuit Judges</u>




_____

---

**RENDELL**, <u>Circuit Judge</u>:

Boston Scientific Company ("BSC") terminated Michael Simons citing a pattern of unprofessional behavior and poor judgment observed by his supervisors, Gary Lickovitch and Samuel Conaway. Simons sued BSC, Lickovitch, and Conaway ("Defendants") in state court alleging violations of the New Jersey Law Against Discrimination ("LAD"), the Family Medical Leave Act ("FMLA"), and the New Jersey Conscientious Employment Protection Act ("CEPA"). Defendants removed the case to the United States District Court for the District of New Jersey, where the District Court granted Defendants' motion for summary judgment and dismissed the case. Because we agree with the District Court that, even when drawing all facts and inferences in favor of Simons, Defendants are entitled to summary judgment, we will affirm.

## Factual Background

BSC hired Simons in 2000 and promoted him to Regional Manager in 2009, a position he held until he was terminated in 2015. Beginning in 2011, alcohol consumption affected Simons' work performance. In 2013, while Conaway was the supervisor to Simons, Conaway observed Simons at business dinners visibly drunk, slurring his speech, and displaying an inability to maintain a conversation. Based on this and other inappropriate conduct, Conaway issued a Written Corrective Action ("WCA")

---

* This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

to Simons, detailing these events, and informing Simons that BSC expects "that [Simons] immediately exhibit professional behavior and good judgment." App. 326.

After the WCA, Simons attended a strategy meeting for regional managers, where he consumed alcohol during breaks and appeared visibly intoxicated at dinner. After that strategy meeting, Conaway issued a Final Corrective Action ("FCA"), which stated that Simons should not "drink during any future BSC meetings" and that "modifying [his] behavior is critical for [his] continued employment with BSC." App. 334. Shortly after, Simons emailed Lickovitch, supervisor to Simons, citing numerous complaints by his team of Lickovitch's conduct, including making a female subordinate uncomfortable by asking her to "[s]tay at the W hotel in NYC" and "dragging [a male subordinate] around to meet girls." App. 347. The email stated, "[t]his e mail [*sic*] will stay in my files and I would fully expect you and I will continue a strong working relationship." *Id.* Lickovitch forwarded the email to Human Resources Director Michelle DeCoux. Lynn Prust, Employee Relations Manager at BSC, investigated the alleged conduct, and concluded Lickovitch had not violated BSC's policies.

After the FCA, Simons attended a national sales meeting. During that meeting, there were reports that he hugged and kissed a senior vice president and engaged in inappropriate conduct with a subordinate. This conduct became the subject of an investigation by Prust. Prust later expanded her investigation to include a February 27th conference call where multiple members reported Simons slurred his words and provided incoherent thoughts, suggesting that he was intoxicated. On March 12, 2015, Simons was arrested for driving under the influence of alcohol in a school zone. The next day,

3

Simons emailed Lickovitch requesting FMLA leave to address his alcoholism. Simons did not notify Lickovitch or BSC of the arrest, and BSC approved his medical leave. During the 30-day medical leave, Prust continued her investigation, which included an interview with Simons. During the interview, Simons indicated that he communicated with the Division President, Kevin Ballinger, about concerns he had regarding Conaway and Lickovitch. Prust followed up with Ballinger, who said he did not speak with Simons, nor had he ever discussed Simons' problems. Prust concluded her investigation, finding that Simons was under the influence on the February 27th Strategy call and that he lied about discussing Lickovitch's conduct with Ballinger.

DeCoux scheduled a meeting with Simons after his return from FMLA leave to discuss subsequent disciplinary action. In anticipation of that meeting, DeCoux hired a private security team that uncovered the March 12th DUI and informed her of the arrest. Lickovitch, Conaway, Prust, DeCoux, and in-house counsel held a conference call to discuss Prust's investigation, the March 12th DUI, and subsequent disciplinary action. The parties isolated five reasons for Simons' termination: (1) violating the WCA; (2) violating the FCA, including his promise to not drink at future meetings; (3) participating in the February 27th call while intoxicated; (4) being arrested (during work hours) and failing to disclose the DUI; and (5) falsely claiming that he spoke with Ballinger. Based on all the above information, BSC terminated Simons' employment.

**District Court Opinion**

Simons sued BSC, Lickovitch and Conaway in state court alleging violations of the LAD, FMLA and CEPA. Defendants removed the case to the United States District

4

Court for the District of New Jersey. After discovery, Defendants moved for summary judgment.

The District Court granted Defendants' motion for summary judgment, dismissing Simons' claims under the LAD, FMLA, and CEPA. As for the LAD claim, the District Court found that BSC identified legitimate, non-discriminatory reasons for terminating Simons' employment, namely, ample evidence of misconduct, poor business judgment, and violations of the company's policies. Simons failed to meet his burden that BSC's proffered reasons were merely a pretext for discrimination. Because he failed to establish the underlying claim, his claim that Conaway and Lickovitch aided and abetted violations of LAD also failed. As for the FMLA claim, the temporal proximity between Simons' decision to take leave and his subsequent termination was insufficient, as a matter of law, to establish a causal connection between his request for leave and his termination, especially in light of the evidence of misconduct prior to requesting FMLA leave and the failure to disclose the DUI. And as for the CEPA claim, Simons failed to point to any facts that amounted to whistleblowing, or that would demonstrate a causal connection between his whistleblowing and subsequent termination.

The District Court granted summary judgment for the Defendants, which Simons appealed and we now review.

## Analysis

Our review of a district court's grant of summary judgment is plenary. *Atkinson v. Lafayette College*, 460 F.3d 447, 451 (3d Cir. 2006). Summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and

5

the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). We "(i) resolve conflicting evidence in favor of the nonmovant, (ii) do not engage in credibility determinations, and (iii) draw all reasonable inferences in favor of the nonmovant." *Simpson v. Kay Jewelers, Div. of Sterling, Inc.*, 142 F.3d 639, 643 n.3 (3d Cir. 1998) (quoting *Fuentes v. Perskie*, 32 F.3d 759, 762 n.1 (3d Cir. 1994)).

1. **Simons failed to meet his burden under the LAD to show BSC's legitimate, non-discriminatory reasons for firing him were merely a pretext for discrimination.**

To state a *prima facie* case of unlawful discrimination under LAD, a plaintiff must show that he or she: (1) belongs to a protected class; (2) held a position for which he or she was objectively qualified; (3) was terminated from that position; and (4) the employer sought to, or did, fill the position with a similarly qualified person. *See Viscik v. Fowler Equipment Co.*, 800 A.2d 826, 833 (N.J. 2002). Once a plaintiff establishes a *prima facie* case, the burden of production shifts to the defendant "to articulate a legitimate, non-discriminatory reason for the adverse employment action." *Id.* "The employer need not prove that the tendered reason *actually* motivated its behavior, as throughout this burden-shifting paradigm the ultimate burden of proving intentional discrimination always rests with the plaintiff." *Fuentes*, 32 F.3d at 763 (emphasis in original). If the employer can establish a legitimate, non-discriminatory reason for terminating the plaintiff, then the burden shifts back to the plaintiff to establish that the "proffered reason [is] merely a pretext for discrimination." *Viscik*, 800 A.2d at 833. "[A] plaintiff who has made out a prima facie case may defeat a motion for summary judgment by *either* (i) discrediting the

6

proffered reasons, either circumstantially or directly, or (ii) adducing evidence, whether circumstantial or direct, that discrimination was more likely than not a motivating or determinative cause of the adverse employment action." *Fuentes*, 32 F.3d at 764 (emphasis in original). This series of shifting burdens is known as the *McDonnell Douglas* framework. *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973).

Although Simons can establish a *prima facie* case for discrimination, his LAD claim fails because no reasonable factfinder could conclude that BSC's legitimate nondiscriminatory reasons were merely a pretext for discrimination. BSC has provided legitimate, non-discriminatory reasons for terminating Simons, namely, two written corrective actions concerning alcohol-related conduct, a subsequent DUI arrest, inappropriate conduct on the February 27th conference call, and lying to Prust about speaking to Ballinger. Simons disputes the factual basis of each of these reasons, alleging that "defendant's reasons are…post h[o]c fabrications[.]" App. Br. at 34. But "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986) (emphasis in original).

Simons' assertions do not amount to *genuine* issues of material fact. Simons argues that the WCA and FCA could not possibly serve as the basis for termination because they "expired." But they still indicate a pattern of misconduct that formed the basis of the termination decision. Simons also argues that the District Court ignored testimony indicating he was not intoxicated at the time of the February 27th call,

7

although the testimony cited by Simons mentions that he slurred his words, App. 985, 992, and "start[ed] happy hour early," App. 992. Finally, Simons argues that he did not lie to Prust during the interview because he did in fact speak with Ballinger. But this attempts to create a factual dispute unattached to the law: even if Simons spoke with Ballinger, he fails to show that Prust's conclusion that he falsely claimed he spoke to Ballinger was merely a pretext for discrimination.

Because Simons failed to raise genuine issues of material fact, and the Defendants had legitimate, non-discriminatory reasons for terminating Simons' employment that were not merely pretexts for discrimination, we agree with the District Court that Defendants are entitled to summary judgment on the LAD claim.[1]

2. **Simons failed to meet his burden under the FMLA because he cannot establish a causal connection between his request for leave and the decision to terminate his employment.**

To state a claim under the FMLA, a plaintiff must establish that (1) he engaged in protected activity by requesting FMLA leave; (2) he suffered an adverse decision, such as termination; and (3) the adverse decision was causally related to his request for leave. *See Capps v. Mondelez Global, LLC*, 847 F.3d 144, 152 n.6 (3d Cir. 2017). Like the LAD claim, we apply the *McDonnell Douglas* framework to FMLA claims. The dispute here concerns the causal requirement: to establish a causal relationship, plaintiff must show "either (1) an unusually suggestive temporal proximity between the protected activity and

---

[1] Since the underlying claim is dismissed, we will also affirm the District Court's order dismissing the claim that Lickovitch and Conaway aided and abetted the violation of LAD.

the allegedly retaliatory action, or (2) a pattern of antagonism coupled with timing to establish a causal link." *Budhun v. Reading Hosp. & Med. Ctr.*, 765 F.3d 245, 258 (3d Cir. 2014) (quoting *Lauren W. ex rel. Jean W. v. DeFlaminis*, 480 F.3d 259, 267 (3d Cir. 2007)). But "[a]n employee cannot easily establish a causal connection between his protected activity and the alleged retaliation when he has received significant negative evaluations before engaging in the protected activity." *Ross v. Gilhuly*, 755 F.3d 185, 194 (3d Cir. 2014).

Here, even though there is a short period of time between the request for leave, returning from leave, and the termination, no reasonable factfinder could conclude in the face of the events leading up to the request for leave—namely, two prior written corrective actions, an undisclosed DUI arrest,[2] and an investigation which concluded that Simons was intoxicated during a conference call—that there is a causal relationship between Simons' request for leave and the decision to terminate him. *See, e.g., Ross*, 755 F.3d at 194 (finding that a retaliatory inference was defeated by the request for performance improvement *prior* to knowledge that plaintiff was sick and requesting leave). Therefore, we agree with the District Court that Defendants are entitled to summary judgment on the FMLA claim.

---

[2] Simons contends that the decision to terminate him was made *prior* to the disclosure of the DUI. While there is ample evidence on the record suggesting that this is not true, even so, the other past misconduct, standing on its own establishes that there is no causal connection between the request for leave and decision to terminate.

**3. Simons failed to meet his burden under the CEPA because he cannot establish a connection between his purported whistleblowing and the termination decision.**

To state a *prima facie* case of retaliation under the CEPA, a plaintiff must show: (1) he reasonably believed the conduct he reported violated a law, rule, regulation, or clear mandate of public policy; (2) he performed a "whistleblowing activity" described in N.J.S.A. § 34:19-3; (3) an adverse employment action was taken against him; and (4) a causal connection exists between the whistleblowing activity and the adverse employment action. *Winters v. North Hudson Regional Fire and Rescue*, 50 A.3d 649, 662 (N.J. 2012). We apply the *McDonnell Douglas* framework to CEPA claims.

Here Simons argues that his email to Lickovitch documenting two incidents involving Lickovitch and members of Simons' team constituted "whistleblowing." He further argues that BSC terminated his employment because of this alleged whistleblowing activity. The District Court correctly determined that no reasonable factfinder could conclude that Simons engaged in whistleblowing activity, or that the activity was causally related to his termination. Simons' statement that "[t]his e mail [*sic*] will stay in my files and I would fully expect you and I will continue a strong working relationship," App. 347, evidences neither an intent to disclose nor object to Lickovitch's conduct. Rather, it shows an intent to keep it private. Even if this constituted "whistleblowing," for the same reason Simons' LAD claim failed, the CEPA claim fails: there is no causal connection between his purported "whistleblowing" and his termination. BSC terminated Simons because of the two written corrective actions

10

concerning alcohol-related conduct, a subsequent DUI arrest, inappropriate conduct on the February 27th conference call, and lying to Prust during the investigation about speaking to Ballinger. Even viewing the evidence in a light most favorable to Simons, no reasonable factfinder could conclude that Simons has stated a CEPA claim.

## Conclusion

For the above reasons, we will affirm the District Court's order granting summary judgment.