**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 18-2125
_____

CATHERINE MCMULLEN,
                                        Appellant
v.

ARCADIA UNIVERSITY
_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
No. 2:17-cv-04011
District Judge: Hon. Gerald J. Pappert

_____
Submitted Under Third Circuit L.A.R. 34.1(a)
June 14, 2019
_____

Before: HARDIMAN, KRAUSE, and PORTER,
*Circuit Judges*.

(Filed: August 7, 2019)

_____

OPINION*
_____

_____

* This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not
constitute binding precedent.

PORTER, *Circuit Judge*.

Catherine McMullen brought this case alleging sex discrimination under Title VII of the Civil Rights Act, 42 U.S.C. § 2000e. The District Court granted summary judgment for Arcadia University. We will affirm the judgment of the District Court.

I

Arcadia hired McMullen as a part-time patrol officer in 2007, and Joanna Gallagher as the Director of Public Safety in 2014. The pair worked well together at first. McMullen helped orient Gallagher in her new job, and later in 2014, Gallagher recommended to McMullen that she apply for a promotion to the newly created position of Corporal. Taking Gallagher's advice, McMullen applied for and received the Corporal position. Later that year, McMullen applied for another promotion to Sergeant, but despite recommendations from three people in leadership positions, Gallagher and the rest of the interviewing panel awarded the position to a male colleague.

In 2015, Arcadia began disciplining McMullen and her relationship with Gallagher soured. In July 2015, Gallagher sent McMullen a verbal warning to act "professionally and respectful[ly]" to other employees. Supp. App. 41. Then in January 2016, the Deputy Director of Public Safety Steven Johnson issued a counseling memorandum to McMullen for failing to report that a subordinate never showed up for a shift. In March 2016, the Assistant Director of Public Safety Jeffrey Cochran sent McMullen a written warning for failing to report that a direct subordinate made an inappropriate comment to a campus visitor. That same month, McMullen unintentionally sent Gallagher a disparaging email. App. 111 ("Sad, how many people lives she

2

[Gallagher] has ruined, and how much money the University is wasting to keep one person."). Gallagher forwarded the email to Arcadia's Human Resources department, which then sent McMullen a letter informing her that she would be suspended for three days without pay.

During the suspension, Arcadia began a planned department-wide reorganization. Gallagher announced the elimination of the Corporal position that only McMullen and a male colleague held. As a result, McMullen reverted to a patrol officer without supervisory duties, while the male Corporal was promoted to Shift Supervisor.

Even after her suspension, McMullen received discipline for more infractions. In September 2016, the Human Resources department sent McMullen a "last chance notification," which cautioned that it was her "final opportunity relating to [her] employment." App. 115. The letter warned that any further infraction including disparaging or undermining leadership would lead to her termination. Still, by January 2017, McMullen's file noted five more incidents meriting discipline, including public questioning of her supervisors and arguing with dispatch about whether she would report to an incident off campus.

McMullen contests Arcadia's account of the incidents. Since Arcadia hired Gallagher as McMullen's supervisor in 2014, McMullen filed two Equal Employment Opportunity Commission complaints for sex discrimination and retaliation. The EEOC discharged both complaints and issued a right-to-sue letter.

Ultimately, Arcadia terminated McMullen's employment and McMullen sued under Title VII of the Civil Rights Act, 42 U.S.C. § 2000e. The District Court granted

3

summary judgment for Arcadia and dismissed all of McMullen's claims. McMullen

appeals only her claim that she was fired because of her sex.

II[1]

"We exercise plenary review over the grant or denial of summary judgment and

apply the same standard the district court should have applied." *Minarsky v. Susquehanna*

*Cty.*, 895 F.3d 303, 309 (3d Cir. 2018). Summary judgment is proper "when, drawing all

reasonable inferences in favor of the nonmoving party, 'the movant shows that there is no

genuine dispute as to any material fact,' and thus the movant 'is entitled to judgment as a

matter of law.'" *Id.* (quoting *Thomas v. Cumberland Cty.*, 749 F.3d 217, 222 (3d Cir.

2014)).

We review sex-discrimination claims based on circumstantial evidence under

*McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). Under this framework, a

plaintiff must establish a prima facie case of sex discrimination, which requires showing

that she (1) "is a member of a protected class;" (2) is "qualified for the position" she

seeks to retain; (3) "suffered an adverse employment action;" and that (4) "the action

occurred under circumstances that could give rise to an inference of intentional

discrimination." *Makky v. Chertoff*, 541 F.3d 205, 214 (3d Cir. 2008). "The burden of

establishing a prima facie case of disparate treatment is not onerous." *Tex. Dep't of Cmty.*

*Affairs v. Burdine*, 450 U.S. 248, 253 (1981). The plaintiff "has the ultimate burden of

persuasion at all times," *Carvalho-Grevious v. Del. State Univ.*, 851 F.3d 249, 257 (3d

---

[1] The District Court had jurisdiction under 28 U.S.C. § 1331, and we have jurisdiction under 28 U.S.C. § 1291.

Cir. 2017) (citation omitted), but if the plaintiff can meet all four factors, then the burden of production switches to the defendant to "articulate some legitimate, nondiscriminatory reason" for the termination. *McDonnell Douglas*, 411 U.S. at 802. If the defendant does so, then that burden switches back to the plaintiff to prove that the defendant's nondiscriminatory reasons were pretextual and the real reason for the adverse action was sex discrimination. *Burton v. Teleflex Inc.*, 707 F.3d 417, 426 (3d Cir. 2013).

Here, McMullen did not carry her ultimate burden. Even assuming that she established a prima facie case of discrimination,[2] she does not dispute that Arcadia has presented legitimate, nondiscriminatory reasons for her discharge[3] and has not shown pretext, which she would need to establish "either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered reason is unworthy of credence." *Ezold v. Wolf, Block, Schorr & Solis-Cohen*, 983 F.2d 509, 523 (3d Cir. 1992) (quoting *Burdine*, 450 U.S. at 256).

---

[2] The parties agree that McMullen met the first three *McDonnell Douglas* factors. For McMullen's contention that she also met the fourth and therefore established a prima facie case, McMullen relies on (1) a purported comment made by her supervisor that "she did not want a woman supervisor in the department … [because] she had trouble with women supervisors in her past position before Arcadia and that she got along better with men than women," App. 109; (2) an alleged dearth of female promotions at Arcadia; and (3) an assertion that male officers were treated more favorably than female officers, as evidenced by an incident where male officers were not disciplined when caught watching March Madness and leaving their vehicles unattended while on duty. Because McMullen's failure to establish pretext is dispositive, as discussed more fully below, we need not address these points.

[3] Indeed, Arcadia was thorough in documenting a list of McMullen's infractions before her termination, which were nondiscriminatory on their face.

McMullen specifically disputes five of the incidents Arcadia cited as justifications for her termination, arguing that her version shows that Arcadia's justifications are unworthy of credence. For two of the incidents, McMullen alleges that she was never reprimanded for her conduct and so she was unaware of any problem until she received the termination letter. But even if the better practice is to contemporaneously discuss offending incidents with the employee, McMullen must show more than that Arcadia was not "wise, shrewd, prudent, or competent" in its actions. *Capps v. Mondelez Global, LLC*, 847 F.3d 144, 154 n.9 (3d Cir. 2017) (quoting *Fuentes v. Perskie*, 32 F.3d 759, 765 (3d Cir. 1994)).

As for the other three incidents, McMullen argues that Arcadia's accounts of what happened are wrong and that these disputes raise questions of fact improperly resolved on summary judgment. First, McMullen disputes an incident in which Arcadia accused McMullen of changing the passwords to the camera and alarm system. After Public Safety employees could not log into the systems, Arcadia says the Information Technology department confirmed that McMullen had asked it to change the password without authorization. McMullen seems to blame the IT department for changing the password because she could not do it herself. Second, McMullen disputes that when dispatch asked McMullen to respond to an incident at the edge of campus, she became argumentative and debated whether the university had jurisdiction. McMullen's version contradicts that of the Director of Facilities Operations Michelle Jasir-Peters, who Arcadia says overheard McMullen's interaction with dispatch. Finally, McMullen

6

disputes that she falsified her log to show that two officers were on shift when there was only one. She claims that the second officer was in training, not on patrol.

Notably, McMullen failed to introduce any evidence other than her own affidavit to contradict Acadia's account of the incidents. And even crediting McMullen's version, as we must, McMullen cannot show that Arcadia's nondiscriminatory reasons for firing her were pretextual. McMullen must show not only that Arcadia's "proffered reason[s were] wrong, but that [they were] so plainly wrong that [they] cannot have been [Arcadia's] real reason[s]." *Keller v. Orix Credit Alliance, Inc.*, 130 F.3d 1101, 1109 (3d Cir. 1997). At best, McMullen's account suggests that Arcadia fired McMullen for what it mistakenly perceived as misconduct. McMullen has not demonstrated "'such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions' … to satisfy [a] factfinder that [Arcadia's] actions could not have been for nondiscriminatory reasons." *Willis v. UPMC Children's Hosp. of Pittsburgh*, 808 F.3d 638, 644–45 (3d Cir. 2015) (quoting *Fuentes*, 32 F.3d at 765). McMullen points to no evidence that Arcadia did not rely on its articulated reasons when terminating her employment. Without evidence in the record suggesting as much, McMullen cannot meet her burden.

\* \* \*

Because McMullen cannot show that Arcadia's nondiscriminatory reasons for her termination were pretextual, we will affirm the District Court.

7