NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 21-2213
_____

MARSHA VANHOOK,
                                        Appellant

v.

THE COOPER HEALTH SYSTEM
_____

On Appeal from the United States District Court
for the District of New Jersey
(No. 1-19-cv-14864)
District Judge:  Honorable Paul S. Diamond, by designation.
_____

Submitted Under Third Circuit L.A.R. 34.1(a)
March 30, 2022
_____

Before:  CHAGARES, Chief Judge, SHWARTZ, Circuit Judge, and ROSENTHAL,
District Judge.[*]

(Filed: March 31. 2022)
_____

OPINION[**]
_____

_____

        [*] Honorable Lee H. Rosenthal, Chief United States District Judge for the Southern
District of Texas, sitting by designation.
        [**] This disposition is not an opinion of the full court and pursuant to I.O.P. 5.7
does not constitute binding precedent.

SHWARTZ, Circuit Judge.

Marsha VanHook appeals the District Court's order granting summary judgment in favor of her employer, Cooper Health System ("Cooper"), on her retaliation claim under the Family and Medical Leave Act ("FMLA"), 29 U.S.C. § 2611, et seq., as well as her discrimination, retaliation, and harassment claims under the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101, et seq., and the New Jersey Law Against Discrimination ("NJLAD"), N.J.S.A. 10:5-1, et seq.  For the reasons set forth below, we will affirm.

I

A

VanHook worked at Cooper from 2010 until 2018 as a patient representative. VanHook experiences depression, anxiety, panic attacks, and related symptoms, and her son experiences attention deficit hyperactivity disorder, severe oppositional defiance disorder, chronic depression, and anxiety.  VanHook says that her son requires constant supervision and medical care.  Starting in 2013, Cooper granted VanHook intermittent leave under the FMLA to care for him when he was not in school or otherwise supervised.  VanHook took FMLA leave totaling 69 days in 2015, 90 days in 2016, and 106 days in 2017.

In October 2016, VanHook herself had a nervous breakdown that required hospitalization for over two months.  VanHook claims that employees at Cooper thereafter harassed her and discriminated against her based on both her disabilities and taking FMLA leave to care for her son.  More specifically, VanHook said that in 2017,

Christine Mueller, VanHook's then-supervisor, harassed her. After VanHook complained, Cooper transferred her to a different office with a new supervisor, Bonnie Mannino. Even after this change, VanHook complained that Mannino "frequently made negative comments regarding . . . FMLA leave." App. 55 ¶¶ 13-14.

On December 27, 2017, Mannino sent an e-mail to Theresa Sentel, a human resources ("HR") employee, requesting clarification on VanHook's yearly FMLA allowance. That same day, Mannino verbally warned VanHook for taking ten unscheduled days of paid time off between April and December 2017, and Cooper issued VanHook a Disciplinary Action Form for absenteeism.

Mannino heard from an employee that VanHook "may not be using her leave as expected or as appropriate." App. 514. HR also heard that VanHook was "using [FMLA leave] very frequently, and a lot of the time in conjunction with a weekend or a day that she had already requested off." App. 457 ¶ 7-9. In early 2018, Cooper employees circulated e-mails expressing concern that VanHook was abusing her FMLA leave. VanHook took more than 150 hours of FMLA leave between January and March 2018.

Cooper hired a firm to conduct surveillance on VanHook over three days when she was on FMLA leave. On February 12, 2018, VanHook stated that her son was not having a "good day," App. 50:47; 306:20; 382, but she was observed driving to Dunkin' Donuts and Walmart, picking up her other son from school, and exercising at L.A. Fitness, all without her son. There was no indication that a tutor or therapist was temporarily at the house, permitting her to leave briefly. On February 19, 2018, she was observed at L.A. Fitness, ShopRite, and Target with her other son, again, with no indication of a need to

3

care for her child.  On March 9, 2018, VanHook took FMLA leave for the stated reason that she needed to take her son to doctor's appointments, but that son was observed boarding a school bus, and VanHook was observed driving her other son to a medical appointment and then to two stores.

On March 2, 2018, Jennifer Tracy, Manager of Benefits and Employee Health, e-mailed Sentel, "This is now the [fourth] Monday in a row[;] we need to ask [VanHook] what's happening on Mondays."  App. 363.  On March 21, 2018, Mannino, Sentel, and Tracy met with VanHook regarding her use of FMLA leave.  When Sentel confronted VanHook with the surveillance footage and asked if she wanted to view it, VanHook refused and tried to turn in her badge.[1]

Cooper terminated VanHook "for abusing FMLA time."  App. 46 ¶ 58; 55 ¶ 16.

B

VanHook sued Cooper, alleging retaliation in violation of the FMLA and discrimination, harassment, and retaliation in violation of the ADA and NJLAD. Following discovery, Cooper moved for summary judgment.  The District Court granted Cooper's motion, finding that (1) VanHook failed to raise an inference that Cooper's stated reason for terminating her—"inappropriate use of FMLA time"—was pretextual and (2) VanHook had not shown harassment based on a disability or her use of FMLA

---

[1] VanHook stated that she "asked for permission to get her day planner so she could explain with certainty [what happened on the days she was surveilled] and was not permitted to do so."  App. 50 ¶ 56.  At her deposition, she explained that she probably lost or threw away the planner, and she still could not recall what she was doing on those days and provided no evidence disputing Cooper's honest belief about what she was doing on the days that she was under surveillance.

4

leave.  VanHook v. Cooper Health Sys., No. 19-cv-14864, 2021 WL 2186989, at *6-11 (D.N.J. May 28, 2021).

VanHook appeals.[2]

## II[3]

We first address VanHook's FMLA retaliation claim and then her claims for harassment under the ADA and NJLAD.

## A

An "FMLA retaliation claim is assessed under the burden-shifting framework established in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973)."  Capps v. Mondelez Global, LLC, 847 F.3d 144, 151 (3d Cir. 2017).  A plaintiff must first establish a prima facie case, which, in the retaliation context, requires her to demonstrate (1) that she engaged in a protected activity, (2) that she suffered an adverse employment action, and (3) causation.  Lichtenstein v. Univ. of Pittsburgh Med. Ctr., 691 F.3d 294, 301-02 (3d Cir. 2012).  "If the plaintiff succeeds, the defendant must articulate a legitimate,

---

[2] Because VanHook has made no argument regarding her discrimination and retaliation claims based on her disability or perceived disability under the ADA or NJLAD, she has forfeited them.  See In re Wettach, 811 F.3d 99, 115 (3d Cir. 2016).

[3] The District Court had jurisdiction under 28 U.S.C. §§ 1331, 1343(4), 1367, and 1392.  We have jurisdiction under 28 U.S.C. § 1291.

We review a district court's order granting summary judgment de novo, Mylan Inc. v. SmithKline Beecham Corp., 723 F.3d 413, 418 (3d Cir. 2013), and we view the facts and make all reasonable inferences in the non-movant's favor, Hugh v. Butler Cnty. Family YMCA, 418 F.3d 265, 267 (3d Cir. 2005).  Summary judgment is appropriate where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The moving party is entitled to judgment as a matter of law when the non-moving party fails to make "a sufficient showing on an essential element of her case with respect to which she has the burden of proof."  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).

5

nondiscriminatory reason for the adverse employment action. [If the defendant does so,] the burden then shifts back to the plaintiff to [show] . . . that the articulated reason was a mere pretext for discrimination." Capps, 847 F.3d at 152 (quoting Ross v. Gilhuly, 755 F.3d 185, 193 (3d Cir. 2014)).

Even assuming that VanHook established a prima facie case, Cooper articulated a legitimate, nondiscriminatory reason for firing her: its belief that VanHook abused her FMLA leave. "Where an employer provides evidence that the reason for the adverse employment action . . . was an honest belief that the employee was misusing FMLA leave, that is a legitimate, nondiscriminatory justification for the discharge." Capps, 847 F.3d at 152. VanHook maintained that she must provide constant care for her son. On three days when VanHook took FMLA leave, however, she was observed spending significant time away from, and engaging in tasks unrelated to, her son.[4] The record also showed that her son was either otherwise supervised (at school or with his father) or at home without other supervision both inconsistent with her stated need for FMLA leave. The surveillance confirmed Cooper's reasonable suspicion and provided the basis for an honest belief that VanHook was abusing FMLA leave,[5] and she was terminated.

VanHook has not shown that Cooper's legitimate, nondiscriminatory reason for her firing is pretextual. VanHook argues that (1) Cooper initiated surveillance without a

---

[4] Even if VanHook was correct that Cooper intended to fire her before the third surveillance occurred, Cooper could have relied on the two February surveillance reports showing abuse. Indeed, VanHook argues that Cooper intended to fire her for improper absences before the third surveillance but could not do so because she was absent.

[5] Even if VanHook has an explanation for each date she used FMLA leave, it is irrelevant. The focus here is whether Cooper had an honest belief, even if incorrect, that

6

reasonable suspicion that she abused her FMLA leave, and (2) Cooper's stated reasons for initiating the investigation changed over time. VanHook's arguments are meritless.

First, "[n]othing in the FMLA prevents employers" from monitoring employees' activities while on FMLA leave "to ensur[e] that [they] do not abuse their leave." Callison v. City of Phila., 430 F.3d 117, 121 (3d Cir. 2005).

Second, even if Cooper needed "reasonable suspicion" to conduct the surveillance, Cooper had a reasonable basis to suspect that VanHook was abusing her FMLA leave. Mannino noticed early in the year that VanHook's total FMLA leave might exceed her yearly allotment. HR learned that VanHook frequently used FMLA leave "in conjunction with a weekend" or a day on which she was using non-FMLA leave. App. 457:8-9. A coworker reported that VanHook was using FMLA leave for reasons different from those she gave Cooper. Based on this information, Cooper "hir[ed] a private investigator to ensure that the FMLA [leave] was being used appropriately." App. 518:6-8. Thus, Cooper's decision to start an investigation was reasonably based on suspicions that VanHook may be abusing the FMLA.

Third, VanHook has not shown that Cooper's stated reasons for initiating the investigation changed over time. Before both the EEOC and the District Court, Cooper explained that it had concerns about the frequency and duration of VanHook's FMLA leave. Although Cooper's court submission details the bases for its suspicion, which we

_____

VanHook misused her FMLA leave, see Capps, 847 F.3d at 155, based on the pattern of her leave usage, coworker's report, and surveillance.

7

have discussed, these additional details supplement, but do not contradict or undermine, its representations to the EEOC.[6]

Thus, the District Court correctly held that Cooper offered a legitimate, non-pretextual, nondiscriminatory reason for VanHook's termination and properly granted Cooper summary judgment on VanHook's retaliation claim.

B

We next address VanHook's harassment claims under the ADA and NJLAD. VanHook argues that the District Court improperly granted summary judgment on the harassment claims sua sponte and applied the wrong legal standard. Although the District Court granted summary judgment on VanHook's harassment claims without providing notice, its procedural error was harmless, and it did not incorrectly apply the harassment standard.

1

District courts have "the power to enter summary judgments sua sponte, so long as the losing party was on notice that she had to come forward with all of her evidence."

---

[6] VanHook also appears to argue that the stated reason for her firing is pretextual because Cooper made inconsistent statements regarding (1) who made the decision to terminate her and (2) whether Sentel knew about VanHook's prior complaints of harassment and discrimination. VanHook is wrong. First, although Cooper represented Sentel was the decision-maker, it never claimed she was the "only" employee involved in the decision. Second, Cooper's representation that Sentel lacked knowledge of VanHook's complaints about Mueller is not inconsistent with its Second Amended Rule 26(a)(1) Disclosures because the Disclosures list the individuals (including Sentel) who have knowledge regarding one of two things, either "the plaintiff's work performance and complaints about the plaintiff or complaints the plaintiff made concerning workplace issues." App. 500.

Celotex, 477 U.S. at 326; Fed. R. Civ. P. 56(f). Notice is sufficient if the party "had reason to believe the court might reach the issue and received a fair opportunity to put its best foot forward." Gibson v. Mayor & Council of Wilmington, 355 F.3d 215, 223 (3d Cir. 2004) (citation omitted); see also Acumed LLC v. Advanced Surgical Servs., Inc., 561 F.3d 199, 223 (3d Cir. 2009) (requiring a court to give "notice of its intention to consider granting summary judgment so that [the parties] have an opportunity to marshal evidence on the motion").

Here, VanHook had no reason to think that the District Court would reach VanHook's harassment claims in deciding Cooper's motion for summary judgment. First, Cooper presented no arguments concerning VanHook's harassment claims. Second, the District Court did not provide notice that it intended to sua sponte evaluate those claims. Thus, the District Court procedurally erred in granting summary judgment on VanHook's harassment claims sua sponte.

Such a procedural error may be excused, however, when it is harmless. A district court's failure to give the parties notice that it intends to consider granting summary judgment is harmless when, for example, additional evidence that would have been presented to the district court had notice been given, would not have changed the outcome. Acumed, 561 F.3d at 224. VanHook has not identified any additional evidence of harassment that she would have presented to the District Court had she been given notice that the Court intended to consider those claims. Id. at 225.

9

Thus, although the District Court did not provide notice, that procedural error was harmless. As a result, we will review its ruling granting Cooper summary judgment on VanHook's harassment claims.

2

To succeed on a claim for harassment due to a hostile work environment under the ADA and NJLAD, a plaintiff must show, among other things, that "the harassment was sufficiently severe or pervasive to alter the conditions of her employment and to create an abusive working environment." Walton v. Mental Health Ass'n of Se. Pa., 168 F.3d 661, 667 (3d Cir. 1999); see also Castleberry v. STI Grp., 863 F.3d 259, 263-64 (3d Cir. 2017) (explaining that the applicable standard is "severe or pervasive and not severe and pervasive"); Shepherd v. Hunterdon Dev. Ctr., 803 A.2d 611, 624-26 (N.J. 2002). Because the hostile work environment test is disjunctive, "some harassment may be severe enough to contaminate an environment even if not pervasive; other, less objectionable[] conduct will contaminate the workplace only if it is pervasive." Castleberry, 863 F.3d at 264.

VanHook contends that the District Court required "severe and pervasive" harassment, rather than the proper disjunctive test. Appellant's Br. at 34. While VanHook is correct that the Court at times stated the incorrect standard, the Court's analysis correctly addressed both the severity of the alleged harassment and its frequency. First, the Court noted that VanHook presented few or no examples of the purportedly harassing comments she faced. See, e.g., VanHook, 2021 WL 2186989, at *9. Given this deficiency, the Court was unable to find that the comments were either offensive or

10

numerous. Second, the Court compared the alleged harassment to other cases in terms of both severity and frequency. The cases it cited included evidence about the content of the harassing comments themselves and how often those comments were made. See, e.g., id. at *9-10. The Court thus addressed whether VanHook suffered severe harassment and whether she suffered pervasive harassment, concluding she showed neither.

Reviewing the case de novo, we also conclude VanHook has not shown that whatever harassment she suffered was so "severe or pervasive" as to alter the conditions of her employment. Walton, 168 F.3d at 667. To judge whether a work environment is hostile, courts examine whether it is "so heavily polluted with discrimination as to destroy completely the emotional and psychological stability of [the harassed employee]." Meritor Savs. Bank, FSB v. Vinson, 477 U.S. 57, 66 (1986). We consider the totality of the circumstances, including "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." Walton, 168 F.3d at 667 (quoting Harris v. Forklift Sys., Inc., 510 U.S. 17, 23 (1993)). The record here does not show VanHook was subjected to a hostile work environment.

First, nearly half of the allegedly harassing comments VanHook described in her deposition concern interpersonal conflicts unrelated to VanHook's disabilities or use of FMLA leave. See, e.g., App. 86 ("[Mueller] would try to turn the staff against me . . . [by saying the staff is] very dissatisfied with you"); App. 87 ("I'm the drama starter"); App.

11

87 ("everybody knew who I am, that I'm a complainer"); App. 89 ("I was made out to be a joke and an example [by working the phones]").

Second, other comments mentioning her merely informed other employees that she would be on leave so that Cooper could cover shifts appropriately. Relatedly, VanHook argues that text messages she received while on leave were harassing, but those messages concerned when she would next be available to work. These types of communications do not constitute harassment. Walton, 168 F.3d at 667 n.4.

Third, VanHook has not shown that the harassing comments she faced were severe. On appeal, VanHook points to two comments as showing severe harassment: (1) that she was told (by unnamed coworkers), "oh, there it goes again, Marsha and her accusations that she's having a panic attack," and (2) that Mueller said to her in front of others, "some people are always sick or some people have excuses" and "[VanHook would] have to wait for somebody to come cover [her]." App. 118. "[S]imple teasing, offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the 'terms and conditions of employment.'" Faragher v. City of Boca Raton, 524 U.S. 775, 788 (1998) (citation omitted). Although one comment insensitively referred to aspects of VanHook's mental health, none of the comments was "physically threatening or humiliating." Walton, 168 F.3d at 667; cf. id. at 667 n.4 (calling a plaintiff "manic-depressive" or threatening to fire her if she did not attend a ceremony despite her agoraphobia was insufficient). Likewise, VanHook herself described the statements made about her FMLA leave as "little comments" and "little

12

remarks." App. 85. Thus, VanHook has not shown that whatever harassment she suffered was severe.

Fourth, VanHook has not presented evidence that comments about her disability or FMLA leave were frequent enough to be pervasive. Although she claims coworkers made comments "on numerous occasions," App. 101, or "[e]very time [she] walked" into a room, App. 85, she was largely unable to identify when the comments were made or who made them. When asked at her deposition who besides Mueller harassed her, VanHook stated she could not recall names but that "[i]t was the whole staff." App. 119. When asked about what other employees said to her, VanHook repeatedly said she could not recall. No reasonable jury could find, based on her conclusory and unspecific testimony, that VanHook suffered pervasive harassment that "heavily polluted" the workplace. Meritor, 477 U.S. at 66.

Thus, summary judgment in favor of Cooper on VanHook's harassment claims was warranted.

### III

For the foregoing reasons, we will affirm the order of the District Court.